UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Christopher Harold Swan

     v.                              Civil No. 11-cv-482-JD
                                     Opinion No. 2013 DNH 046
Michael J. Astrue, Commissioner,
Social Security Administration


                           O R D E R

    Christopher Harold Swan seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for disability insurance benefits under Title II and supplemental security income under Title XVI.  Swan contends that the Administrative Law Judge ("ALJ") erred in failing to find that Swan met or equaled Listing 12.05C under 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Commissioner moves to affirm the decision.


                          Background

    Swan applied for social security disability insurance benefits and supplemental security income on July 10, 2007, alleging a disability as of June 30, 2007.  The ALJ noted in his decision that Swan's "earnings record shows that [he] has

acquired sufficient quarters of coverage to remain insured through March 31, 2012." Swan claimed a disability due to mood swings, depression, bipolar disorder, substance abuse, bleeding ulcers, back problems, and neck and leg pain.

From 2007 through 2009, Swan saw Richard Young, ARNP, of Health First Laconia several times for treatment of his back pain. Nurse Young prescribed Swan flexeril and darvocet and diagnosed him with chronic back and neck pain.

Throughout the same period, Swan saw various medical practitioners for treatment of depression. He was prescribed amitriptyline, wellbutrin, and lexapro. In October 2007, Dr. Michael Evans diagnosed Swan with alcohol dependence and a history of depression. In November 2007, Judith McCarthy, ARNP, gave a provisional diagnosis of a substance induced mood disorder with depressive features.

In November 2007, Dr. Craig Stenslie, a nonexamining state agency medical consultant, completed a Psychiatric Review Technique Form and a mental RFC assessment based upon a review of the record evidence. Dr. Stenslie opined that Swan was no more than moderately limited in areas of understanding and memory, sustaining concentration and persistence, social interaction, and adaptation. Dr. Stenslie did not review or give an opinion as to Swan's IQ score.

In June 2008, Dr. S. Tyutyulkova, another nonexamining state agency medical consultant, completed a medical source statement of Swan's mental ability to perform work-related activities. Dr. Tyutyulkova opined that Swan had no limitations with respect to understanding and remembering simple instructions, carrying out simple instructions, or making judgments on simple work-related decisions. Like Dr. Stenslie, Dr. Tyutyulkova did not review or give an opinion as to Swan's IQ score.

In June 2009, Dr. David Diamond, a psychologist, completed a mental evaluation of Swan and administered a Wechsler Adult Intelligence Scale Test. Dr. Diamond reported that Swan achieved a verbal IQ score of 66, a performance IQ score of 67, and a full-scale IQ score of 63. Dr. Diamond opined that the test results were a valid measure of Swan's intellectual functioning.

A hearing before an ALJ was held on March 7, 2011.[1] Swan was represented by counsel and testified at the hearing. In addition, an impartial medical expert, Dr. Alfred Jonas, and a vocational expert, Howard Steinberg, testified.

---

[1]The ALJ initially held a hearing on March 1, 2010, after which he denied Swan's application for benefits. On July 13, 2010, the Decision Review Board issued an order remanding the claims for a supplemental hearing. The supplemental hearing was held on March 7, 2011, and the ALJ's decision after that hearing is the subject of this order.

The ALJ issued a decision on April 5, 2011, denying benefits.  The ALJ found that Swan had several severe impairments, including degenerative disc disease of the lumbar and cervical spine.  The ALJ also found at Step Three, however, that Swan did not have an impairment that would meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In making that determination, the ALJ found that Swan did meet all the criteria of Listing 12.05, which pertains to mental retardation.[1]

The ALJ found at Step Four that Swan had the residual functional capacity to perform medium work involving simple, repetitive tasks with light social demands and routine interactions with public, supervisors, and peers.  Based on the residual functional capacity assessment, the ALJ found that Swan could return to his past work as a groundskeeper or a housekeeper.  As a result, the ALJ concluded that Swan was not disabled.  The Appeals Council denied Swan's request for review

---

[1]The ALJ initially found that Swan's impairments, including his alcohol abuse, met Listings 12.08 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ further found, however, that if Swan stopped his alcohol abuse, his impairments would not meet Listings 12.08 or 12.09.  See Grogan v. Barnhart, 399 F.3d 1257, 1264 (10th Cir. 2005); Randall v. Astrue, 2011 WL 573603, at *1 (D. Mass. Feb. 15, 2011).  Swan challenges only the ALJ's decision determination concerning Listing 12.05C.  Therefore, the court will not address the ALJ's findings as to Listings 12.08 or 12.09.

on September 13, 2011, making the ALJ's decision the final decision of the Commissioner.

## Standard of Review

In reviewing the final decision of the Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Discussion

Swan contends that the ALJ erred in finding that Swan's impairments did not meet or equal the impairment at Listing 12.05C. The Commissioner points to evidence supporting the ALJ's finding.

The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. 20 C.F.R. § 404.1520

& § 416.920.[2]  At Step Three of the sequential analysis, the ALJ compares the medical evidence of the claimant's impairment "to a list of impairments presumed severe enough to preclude any gainful work."  Sullivan v. Zebley, 493 U.S. 521, 525 (1990).  "If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."  Id.; § 404.1520(a)(4)(iii).

To match a listed impairment, the claimant's medically determinable impairment must satisfy all of the listed criteria.  20 C.F.R. § 404.1525(e).  An impairment equals a listed impairment if the impairment "is at least equal in severity and duration to the criteria of any listed impairment."  § 404.1526(a).  The claimant bears the burden of showing that he has an impairment or combination of impairments that meets or equals a listed impairment.  Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989).

The ALJ found at Step Two that Swan had the following severe impairments: degenerative disc disease of the lumbar spine and

---

[2]The Social Security Administration promulgated regulations governing eligibility for disability insurance benefits at Part 404 and for supplemental security income at Part 416.  Because the regulations are substantially the same, the court will cite only to the disability insurance benefits regulations.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986).

the cervical spine, mild mental retardation, alcohol abuse, depression, and anxiety.  At Step Three, the ALJ found that Swan's impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 12.05C.

Listing 12.05C, which pertains to mental retardation, has three requirements: (1) the claimant developed deficits in adaptive functioning prior to age 22; (2) "[a] valid verbal, performance, or full scale IQ of 60 through 70; and" (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  The ALJ found that Swan had met the first factor, but not the second or third.[3]  Swan contends that his impairments meet all the criteria for Listing 12.05C.

A.    Third Prong of Listing 12.05C

Swan argues that he met the third prong of Listing 12.05C because the ALJ found in Step Two that Swan's degenerative disc disease would be a severe impairment even if Swan stopped his alcohol abuse.  Swan argues that a finding of a severe impairment

---

[3] With regard to the first factor, the ALJ noted that "the record documents a history of difficulties with intellectual functioning as early as high school when [Swan] required an IEP and special education services."  Admin. Rec. at 19.

at Step Two requires a finding that he had a physical impairment imposing an additional and significant work-related limitation of function for Listing 12.05C purposes.

The Commissioner appears to concede that the ALJ's finding at Step Two that Swan's degenerative disc disease would be a severe impairment requires a finding that Swan's impairment meets the third prong of Listing 12.05C. See Def. Mot. at 8 ("Here, although the ALJ found that in the absence of substance abuse, Plaintiff had a severe impairment of degenerative disc disease of the lumbar and cervical spine, he reasonably found that Plaintiff did not meet listing 12.05C because he did not have a valid verbal, performance, or full scale IQ score of 60 through 70."). Even if the Commissioner had not conceded this point, case law is clear that a Step Two finding of a severe impairment satisfies the significant limitations standard of Listing 12.05C. See Nieves v. Sec'y of Health & Human Servs., 775 F.2d 12, 13-14 (1st Cir. 1985) ("Because claimant's impairment was found to be severe, a fortiori it satisfies the significant limitations standard [of 12.05C]."); see also Santos v. Astrue, 2012 WL 1109285, at *6 n.4 (D. Mass. Mar. 30, 2012). Therefore, the ALJ's determination that Swan did not meet the third factor of 12.05C is not supported by substantial evidence.

B.   Second Prong of Listing 12.05C

Swan argues that he met the second prong of Listing 12.05C because Dr. Diamond assessed Swan's IQ score at 63, and Dr. Jonas testified that the score was valid.  The Commissioner argues that the ALJ's determination that Swan's IQ score was invalid and inconsistent with the record is supported by substantial evidence.

In discussing Swan's IQ score, the ALJ wrote:

> I note that [Swan] did undergo testing of his intellectual function with David Diamond, MD in June 2009.  Although Dr. Diamond assessed his full scale IQ at only a 63, I find that the results of his examination were not valid because the claimant testified that he drank beer the night before.  The IQ of 63 is also not consistent with the remainder of the record which shows the claimant is able to go hiking, fishing, and camping, and having previous jobs at the semi-skilled level, with jobs at the unskilled level.

Admin. Rec. at 19 (internal citations omitted).

The record shows that Swan drank one beer the night before his IQ test and that both Dr. Diamond, who administered the test, and Dr. Jonas, the independent medical examiner, opined that the test result was valid.[4]  There is nothing in the record to

---

[4]At the hearing, Dr. Jonas testified that if Swan had just had one beer the night before the IQ test, "then that would not have interfered with his testing, so I think we should accept these IQ's and, therefore, get him into 12.05."  Admin. Rec. at 96.  Dr. Jonas further noted that Dr. Diamond did not suggest that the scores were invalid.  Id.

support the ALJ's determination that Swan's limited alcohol consumption the night before the IQ test should invalidate his score. Therefore, the ALJ erred in disregarding Swan's IQ score on that basis. See Nieves, 775 F.2d at 14 (Appeals Council erred in disregarding claimant's IQ score when there was no medical evidence as to why the score was invalid); cf Wilkinson v. Astrue, 2008 WL 1925133, at *4-*5 (D.R.I. Apr. 30, 2008) (affirming ALJ's decision which invalidated claimant's IQ score because numerous other medical practitioners opined that the IQ scores were inconsistent with the claimant's medical records, history, and evaluations).

The ALJ's determination that Swan's IQ score was invalid because of his physical activities or work history was also not supported by substantial evidence. "The fact that an individual lives and functions independently, is able to work, and has attended schooling (even beyond high school) have been held in several cases to be facts which are not inconsistent with mild mental retardation." Gross v. Astrue, 2012 WL 2449900, at *10 (D. Kan. June 26, 2012) (citing Markle v. Barnhart, 324 F.3d 182 (3rd Cir. 2003)); see also Nieves, 775 F.2d at 14. "Listing 12.05C accommodates such activities, and anticipates that a mildly mentally retarded individual will be able to perform all of these activities . . . unless or until he develops another

severe mental or physical impairment." Gross, 2012 WL 2449900, at *10. As discussed above, the medical evidence in the record regarding Swan's IQ test supports the validity of Swan's reported score.[5] "[An] ALJ [is] not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen, 172 F.3d at 35.[6]

The Commissioner argues that Dr. Stenslie and Dr. Tyutyulkova opined that Swan did not have a medically determinable impairment of mental retardation. Neither doctor, however, gave an opinion as to Swan's IQ score and, therefore, their opinions do not bear on whether Swan meets the second factor of Listing 12.05C. See Hewes v. Astrue, 2011 WL 4501050,

---

[5]Other than the opinions of Dr. Diamond and Dr. Jonas, the only evidence in the record concerning Swan's IQ score is a mental impairment questionnaire by Dr. Christine Runyan. In response to the question, "Does [Swan] have a low IQ or reduced intellectual functioning," Dr. Runyan wrote that she was "[u]nable to answer." She added, "Suspect relatively low IQ but not meeting criteria for MR." That opinion does not contradict Swan's reported IQ score.

[6]The Commissioner points to Dr. Jonas's testimony that there was no "good basis" for finding that Swan met the criteria of Listing 12.05C. The basis for that opinion, however, was that Swan did not have a "separate and impairing problem" and, therefore, did not meet the third prong of 12.05C. As discussed above, the Commissioner's finding at Step Two that Swan had a severe impairment satisfies the third prong of 12.05C. Therefore, that part of Dr. Jonas's testimony is irrelevant to the court's determination.

at *4 (D. Me. Sept. 27, 2011) ("The existence or non existence of a diagnosis of mental retardation is not an element of the [12.05C] analysis.") (internal quotation marks and citation omitted).  Regardless, neither doctor's opinion was mentioned by the ALJ in his determination that Swan's IQ score was invalid, and the Commissioner cannot provide a post-hoc rationale for the ALJ's erroneous findings.  See Van Blarcom v. Astrue, 2011 WL 2118643, at *4 (D.N.H. May 25, 2011); Larlee v. Astrue, 694 F. Supp. 2d 80, 84 (D. Mass. 2010).

Accordingly, the ALJ's determination that Swan did not meet the criteria of Listing 12.05C is not supported by substantial evidence in the record.

## Conclusion

For the foregoing reasons, the applicant's motion to reverse (document no. 8) is granted.  The Commissioner's motion to affirm (document no. 10) is denied.

Under sentence four of § 405(g), the case is reversed and remanded for further proceedings. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                                                 /s/ Joseph A. DiClerico, Jr.
                                                                 Joseph A. DiClerico, Jr.
                                                                 United States District Judge

March 28, 2013

cc:  Robert J. Rabuck, Esquire
     D. Lance Tillinghast, Esquire